**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BENJAMIN CAREATHERS, individually, and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  vs.<br><br>RED BULL NORTH AMERICA, INC., a California Corporation,<br><br><br>     Defendants. | Civil Action No. 1:13-CV-0369 (KPF) |
| DAVID WOLF and MIGUEL AMARAZ, individually and on behalf of others similarly situated,<br><br>     Plaintiff,<br><br>  vs.<br><br>RED BULL GMBH, a foreign company; RED BULL NORTH AMERICA, INC., a California Corporation; and RED BULL DISTRIBUTION COMPANY, INC., a Delaware corporation,<br><br>     Defendants. | Civil Action No. 1:13-CV-08008(KPF) |

## OBJECTION AND NOTICE OF OBJECTION
## OF THEODORE H. FRANK

Theodore H. Frank
Center for Class Action Fairness
1718 M Street NW, No. 236
Washington, DC 20036
Phone: 703-203-3848
Email: tfrank@gmail.com

*In pro per*

# TABLE OF CONTENTS

TABLE OF CONTENTS...........................................................................................ii

TABLE OF AUTHORITIES.....................................................................................iii

INTRODUCTION ...................................................................................................1

I.    Objector Theodore H. Frank is a class member and intends to appear through
      counsel at the fairness hearing..........................................................................2

II.   The Court has a fiduciary duty to the absent members of the class....................2

III.  The settlement shows signs of self-dealing and provides for excessive fees.........5

      A.    The settlement's questionable clear sailing agreement requires
            heightened scrutiny...................................................................................6

      B.    The settlement provides for a "defective" segregated fund, which
            deters scrutiny of fees...............................................................................7

      C.    The fee request contemplated by the settlement is based on an
            overestimation of class benefit; a downward departure is warranted.............8

            1.    Red Bull's in-kind payments should not be valued at
                  market retail for the purposes of calculating settlement value............8

            2.    The prospective injunctive relief counted as a class "benefit"
                  does nothing to compensate actual class members. ..........................11

            3.    Administrative expenses reduce class benefit even further, and
                  by an undisclosed amount................................................................14

      D.    The potential for the fee request to be driven by counsel's self-interest
            is further heightened because the deadline for objections is the before
            the deadline for the fee motion in violation of Rule 23(h)..........................15

IV.   The Settlement's future claims release is too broad. .........................................16

V.    The Settlement's cy pres component impermissibly fails to identify the residual recipient. ..18

VI.   The parties have not met their burden that the proposed settlement class meets the
      requirements for certification under Rule 23. ..................................................19

      A.    The proposed class fails the commonality and typicality requirements
            of Rule 23(a) because common questions of law and fact do not
            predominate over individual ones...............................................................19

CONCLUSION ......................................................................................................23

Frank Objection
Case No: 1:13-CV-0369 (KPF)

## TABLE OF AUTHORITIES

**Cases**

*Ahdoot v. Babolat*, 2014 U.S. Dist. LEXIS 124115 (C.D. Cal. Sept. 4, 2014)...........................14

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)..............................................3, 19, 21

*Authors Guild v. Google, Inc.*, 770 F. Supp. 2d 666 (S.D.N.Y. 2011)......................................17

*Blessing v. Sirius XM Radio Inc.*, 2011 WL 1194707, 2011 U.S. Dist. LEXIS 32791 (S.D.N.Y. Mar. 29, 2011)..........................................................................................................20

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010)..............................................................19

*Brown v. Sega Amusements, U.S.A., Inc.*, 2015 U.S. Dist. LEXIS 28442 (S.D.N.Y. Mar. 9, 2015)......... 8

*Cassese v. Wash. Mut., Inc.*, 2014 U.S. Dist. LEXIS 85836 (E.D.N.Y. June 23, 2014) ...........................7

*Cassese v. Williams*, 503 Fed. Appx. 55 (2d Cir. 2012)....................................................16

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care*, 504 F.3d 229 (2d Cir. 2007) ..................................................................................................4, 5

*Chavez v. PVH Corp.*, 2015 U.S. Dist. LEXIS 17511 (N.D. Cal. Feb. 11, 2015).........................17

*Chesbro v. Best Buy Stores*, L.P., 2014 U.S. Dist. LEXIS 25404 (W.D. Wash. Feb. 26, 2014)............14

*Crawford v. Equifax Payment Servs. Inc.*, 201 F.3d 877, (7th Cir. 2000).....................................14

*Custom LED, LLC v. ebay, Inc.*, 2013 U.S. Dist. LEXIS 122022 (N.D. Cal. Aug. 27, 2013)............17

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ...................................................3

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006)..............................................4, 19

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012).......................................3, 8, 10, 12, 15, 18

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell I*")..........................................3

*Detroit v. Grinnell Corp.*, 560 F.2d 1093 (2d Cir. 1977) ("*Grinnell II*").......................................5

*Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014) ..............................................4,7

*Felix v. Northstar Location Servs.*, 290 F.R.D. 397 (W.D.N.Y. 2013) .......................................13

*Fink v. Time Warner Cable*, 810 F. Supp. 2d 633 (S.D.N.Y. 2011...........................................13

Frank Objection
Case No: 1:13-CV-0369 (KPF)

*Goldberger v. Integrated Res*, 209 F.3d 43, 51 (2d Cir. 2000) ………………………………..5

*Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096 (C.D. Cal. 2012)……………………………21

*Grant v. Bethlehem Steel Corp.*, 823 F.2d 20 (2d Cir. 1987)………………………………….2

*In re Agent Orange Prods. Liab. Litig.*, 818 F.2d 216 (2d Cir. 1987)………………………….4

*In re Am. Express Fin. Advisors Secs. Litig.*, 672 F.3d 113 (2d Cir. 2011)………………….16, 17

*In re Am. Int'l Group Secs. Litig.*, 689 F.3d 229 (2d Cir. 2012)…………………………….20

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013)……………………….3, 8, 15

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ……………… 3, 4, 6-8, 13

*In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, 288 F.3d 1012 (7th Cir. 2002)………………….21

*In re Clorox Consumer Litigation*, 301 F.R.D. 436 (N.D. Cal. 2014)………………………….20

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) ………………………3, 4, 8, 12, 23

*In re Excess Value Ins. Coverage Litig.*, 598 F. Supp. 2d 380, 390 (S.D.N.Y. 2005)………………….8

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ……. 4, 7, 8

*In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139 (S.D.N.Y. 2008)………………….20

*In re Katrina Canal Breaches Litig.*, 628 F.3d 185 (5th Cir. 2010)………………………………….3

*In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242 (2d Cir. 2011)………………3, 21

*In re Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010) ……………………………… 16

*In re Oracle Secs. Litig.*, 132 F.R.D. 538 (N.D. Cal. 1990)………………………………….12

*In re St. Jude Med., Inc.*, 522 F.3d 836 (8th Cir. 2008)………………………………….20

*In re VeriFone Holdings, Inc. Sec. Litig.*, 2013 U.S. Dist. LEXIS 126988 (N.D. Cal. Sept. 5, 2013)…...18

*In re Volkswagen & Audi Warranty Extension Litig.*, 2015 U.S. Dist. LEXIS 16646 (D. Mass. Feb. 10, 2015)………………………………………………………………………….14

*In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114 (2d Cir. 2014)………………………....5

*In re World Trade Ctr. Disaster Site Litig.*, 2015 U.S. Dist. LEXIS 15942 (S.D.N.Y. Jan. 16, 2015)……7

*Johnson v. Nextel Communs., Inc.*, __F.3d__,  2015 U.S. App. LEXIS 3470 (2d Cir. Mar. 4, 2015)…...21

Frank Objection
Case No: 1:13-CV-0369 (KPF)

*Kaplan v. Rand*, 192 F.3d 60 (2d Cir. 1999)..................................................................12

*Langendorf v. Skinnygirl Cocktails, LLC*, 2014 U.S. Dist. LEXIS 154444, (N.D. Ill. Oct. 30, 2014).....20

*Martin v. Cargill, Inc.*, 295 F.R.D. 380 (D. Minn. 2013)................................................13

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012)........................................21

*Mba v. World Airways*, 369 Fed. Appx. 194 (2d Cir. 2010) ..............................................5

*McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008)......................................19

*McNair v. Synapse Group, Inc.*, 672 F.3d 213 (3d Cir. 2012)......................................13

*Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002)........................................19

*Myles v. AlliedBarton Sec. Servs., LLC*, 2014 U.S. Dist. LEXIS 159790 (N.D. Cal. Nov. 12, 2014).....14

*O'Brien v. Brain Research Labs, LLC.*, 2012 U.S. Dist. LEXIS, 113809 (D.N.J. Aug. 9, 2012)...........9

*Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242 (E.D.N.Y. 2009) ..............1, 9, 10

*Pearson v. NBTY*, 772 F.3d 778 (7th Cir. 2014) ....................................................7, 8, 13

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011)............................21

*Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108 (S.D.N.Y. 1999)........................12

*Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014) ..........................3, 4, 6, 7, 14, 16

*R.H. v. Premera Blue Cross*, 2014 U.S. Dist. LEXIS 92691 (W.D. Wash. July 7, 2014)..................14

*Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561 (E.D. Pa. 2001).....................17

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)................................................4, 12

*Synfuel Techs., Inc., v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006)........................12

*TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456 (2d Cir. 1982)................................17

*TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418 (N.D. Cal. 2009)......................................13

*True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1077 (C.D. Cal. 2010)..............................13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005)................................17

*Weeks v. Kellogg Co.*, 2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) ................1, 2, 10

v

*Weinberger v. Great N. Nekoosa Corp.,* 925 F.2d 518 (1st Cir. 1991)............................................6

*Willner v. Manpower Inc.,* 2014 U.S. Dist. LEXIS 123450 (N.D. Cal. Sept. 3, 2014).....................15

## Rules and Statutes

Ala. Code § 8-19-10(e) ................................................................................ 21

Cal. Bus & Prof. Code § 17200 ......................................................................... 21

Fed. R. Civ. P. 23(a)(2) .................................................................................. 19

Fed. R. Civ. P. 23(b) .................................................................................19, 20

Fed. R. Civ. P. 23(e) ............................................................................... 3, 13, 18

Fed. R. Civ. P. 23(h)(1) ..............................................................................1, 2, 16

Tex. Bus & Com. Code § 17.50(a)(1)(B)..............................................................21

Wyo. Stat. Ann. § 40-12-108(a) ......................................................................... 21

## Other Authorities

American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.05 (2010) ............................3, 6, 8

Grimmelmann, "Future Conduct and the Limits of Class Action Settlements,"
    91 *N.C. L. Rev.* 387 (2013) .................................................................... 17

3 *Newberg on Class Actions* (5th ed. 2014) ............................................................. 16

Procedural Guidance for Class Action Settlements,
    http://cand.uscourts.gov/ClassActionSettlementGuidance ..................................... 14

van Boven, Leaf et al,
    "Mispredicting the Endowment Effect: Underestimation of Owners' Selling Prices by Buyers'
    Agents,"
    51 *Journal of Economic Behavior and Organization* 351, 353 (2006)....................................... 9

Frank Objection
Case No: 1:13-CV-0369 (KPF)

# INTRODUCTION

With this proposed settlement class counsel offer Defendants a release from all potential claims, not only relating to the marketing practices that formed the basis for this litigation but to *any* claims predicated on new labeling, advertisements or just plain customer "consumption" of Red Bull that arise even after the time of final approval. Stipulated Settlement (Dkt. 42-1) at 10.In exchange for this expansive preemption, Defendants provide a settlement fund, supposedly worth $13 million, to be divided among class members who file claims once administration costs are deducted. But, more significantly for class counsel's interests, Defendants also provide acquiescence to the unwarranted valuation of superficial changes they have made to their website and advertising at $18.5 million (Settlement at 22), thereby inflating by 140% the settlement "benefit" for the purposes of justifying class counsel's $4.75 million fee request, a certain unjust windfall.

This is not the only way in which this settlement is mutually convenient (to all parties save the class members). By offering class members an in-kind option of Red Bull product and valuing it at its retail price of $15—$5 more than the cash alternative—the parties at once artificially jack up the value of claims made for class counsel's fee purposes while saving Defendants money. As discussed below, not only is $15—under the law of courts in this Circuit and others—an inaccurate estimate of class members' subjective valuation of the product option, but it vastly overstates the cost to Defendants of each in-kind claim (which, depending on their basis cost, upon information and belief could actually be even less than the $10 cash option). *See, e.g., Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 267 (E.D.N.Y. 2009); *Weeks v. Kellogg Co.*, 2013 WL 6531177, 2011 U.S. Dist. LEXIS 155472, at *76 (C.D. Cal. Nov. 23, 2011).

The settlement has a variety of other "questionable" "red flags," including a facial violation of Rule 23(h)'s requirement of notice to class members. The proposed settlement should not be approved. If it is approved, there should at least be a reduction in attorneys' fees to accurately reflect the value of the settlement to the class.

I.     **Objector Theodore H. Frank is a class member and intends to appear through counsel at the fairness hearing.**

Theodore H. Frank is a member of the class. His current postal address is 1718 M Street NW, #236, Washington DC, 20036 and his current telephone number is (703) 203-3848. *See* Declaration of Theodore H. Frank ("Frank Decl.").In 2012, during the class period, he purchased Red Bull Sugarfree at the Costco in Arlington, Virginia, for personal household use. *Id.* He is not a Red Bull employee, officer, director or agent. *Id.* He filed Claim Number 7B7B54B376 on or about March 1, 2015. *Id.* He thus qualifies as a class member, with standing to object to the settlement and fee request. *See* Order Granting Preliminary Approval of the Settlement, Directing Notice to the Classes, and Scheduling Fairness Hearing (Dkt. 45) at 2-3.

Mr. Frank's attorney, Erin Sheley of the Center for Class Action Fairness, a Public Interest Law Firm, is representing him *pro bono*, will be filing a motion for admission *pro hac vice*, and will appear at the fairness hearing. Frank's counsel intends to discuss matters raised in this Objection. Frank does not plan to call any witnesses, but reserves the right to make use of all documents entered on the docket by any settling party or objector and to cross-examine any witnesses who testify in support of the settlement. Frank joins any objections not inconsistent with the objections he makes below. He reserves the right to supplement his objection within two weeks of the settling parties' filing of papers supporting the settlement and Rule 23(h) request to respond to any new arguments made by the parties.

II.    **The Court has a fiduciary duty to the absent members of the class.**

A "district court ha[s] a fiduciary responsibility to the silent class members." *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987). "The judge asked to approve the settlement of a class action is not to assume the passive role that is appropriate when there is genuine adverseness between the parties rather than the conflict of interest recognized and discussed in many previous class action cases, and present in this case. Critically the judge must assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel, bearing in

mind that the higher the fees the less compensation will be received by the class members." *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014).

"The inquiry appropriate under Rule 23(e)... protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become agreed to by fainthearted before an action is adjudicated or are able to secure satisfaction of their individual claims by a compromise." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (quotation omitted). Because we deal here with a pre-certification settlement, an even "higher degree of scrutiny is required." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citing cases). Approval of a pre-certification settlement will occasion appellate review of "the entire settlement, paying special attention to the terms of the agreement containing convincing indications that the incentives favoring pursuit of self-interest rather than the class's interest in fact influenced the outcome of negotiations." *Dennis v. Kellogg Co.*, 697 F.3d 858, 867 (9th Cir. 2012) (internal quotation omitted).

The settling parties—who have yet to file papers that class members can scrutinize before objecting—will likely belabor the nine *Grinnell*[1] fairness criteria in their final approval papers. While satisfaction of those factors is necessary for approval under Rule 23, it is not sufficient. As other Circuits have explicitly recognized, multi-factor fairness tests like *Grinnell's* are not the exclusive reasons for rejecting a settlement.[2] And repeatedly, the Second Circuit too has reviewed and repudiated the approval of class action settlements applying broad notions of fairness without reference to the *Grinnell* factors. *E.g., In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d

---

[1] *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) (*Grinnell I*).
[2] *Pampers*, 724 F.3d at 718 (looking beyond Sixth Circuit's seven-factor test to find settlement unfair when it constitutes "preferential treatment" for class counsel); *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013) (failure to consider "the degree of direct benefit provided to the class" reversible error, though not in Third Circuit's nine-factor test); *Bluetooth*, 654 F.3d at 946 (consideration of eight-factor test "alone is not enough to survive appellate review"); *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 195 (5th Cir. 2010) (multi-factor test not sole reasons a settlement should be rejected under Rule 23(e)); *see also ALI Principles* §3.05(b) (suggesting that a "settlement may also be found to be unfair for any other significant reason that may arise from the facts and circumstances of the particular case.").

242 (2d Cir. 2011) (reviewing settlement and remanding to cure intra-class conflict); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care*, 504 F.3d 229, 249 (2d Cir. 2007)(same); *Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) (reversing approval due a provision that was unfair to a non-settling defendant).

While the Court must take care to see that a settlement is not the product of direct collusion between defendant and class counsel, this determination alone is insufficient. *In re Bluetooth Headset Prods.Liab.Litig.*, 654 F.3d 935, 947-48 (9th Cir. 2011) (requiring courts to be "particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests ... to infect the negotiations") (citing *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003)). It is "naïve" to base confidence in the fairness of a settlement on the mere fact that "arms-length negotiations" took place between class counsel and the defendant. *Redman*, 768 F.3d at 628. Such negotiations are "consistent with the existence of a conflict of interest on the part of one of the negotiators—class counsel—that may warp the outcome of the negotiations." *Id.* This is because "a defendant is interested only in disposing of the total claim asserted against it" and "the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 717-18 (6th Cir. 2013) ("*Pampers*") (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 819-20 (3d Cir. 1995)); *accord Bluetooth*, 654 F.3d at 949; *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014). As the Second Circuit has described it, "The concern is not necessarily in isolating instances of major abuse, but rather is for those situations short of actual abuse, in which the client's interests are somewhat encroached upon by the attorney's interests." *In re Agent Orange Prods. Liab. Litig.*, 818 F.2d 216, 224 (2d Cir. 1987) (vacating fee). Therefore, "the adversarial process—or what the parties here refer to as their 'hard-fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is *allocated* between the class representatives, class counsel, and unnamed class members." *Pampers*, 724 F.3d at 717 (emphasis in original).Arms-length negotiations with the defendant

provides insufficient protection against class counsel enriching themselves at the expense of class members.

Because the relationship between class members and counsel turns directly adversarial when fees are paid out of the lump sum of money the defendant is willing to put on the table to resolve the litigation, the Court must carefully scrutinize any proposed fee applications. *Mba v. World Airways*, 369 Fed. Appx. 194, 198 (2d Cir. 2010) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care*, 504 F.3d 229, 249 (2d Cir. 2007) and *Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1099 (2d Cir. 1977) ("*Grinnell II*")). Motivated by a fear of "routine windfalls where the recovered fund runs into the multi-millions" and noting that some district courts had "apparently eased into a practice of systematically awarding fees in the 25% range, regardless of type of case, benefits to the class, numbers of hours billed, size of fund, size of plaintiff class, or any other relevant factor," the Second Circuit has emphasized the importance of exacting scrutiny into the individual facts of each case. *Goldberger v. Integrated Res*, 209 F.3d 43, 51, 52 (2d Cir. 2000) (internal quotations omitted). The decision should be made by the Court with "a jealous regard to the rights of those who are interested in the fund" and an "overarching concern for moderation." *Id.* at 53.

### III.   The settlement shows signs of self-dealing and provides for excessive fees.

Courts must ensure that overcompensation of attorneys does not result in under-compensation of class members. *See In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127n.9 (2d Cir. 2014) ("Where an attorney derives a benefit when his clients agree to settle or dismiss their claims, a conflict of interest may arise. It is a reasonable exercise of a court's power to modify a fee arrangement to prevent a violation of the attorney's ethical responsibilities"). The perverse configuration of incentives attendant to settlement negotiations is particularly dangerous in cases such as this one, where attorneys for the class justify fees premised in significant part on settlement "benefits," such as injunctions, that are almost costless to the defendant. Stipulated Settlement at 21-22. This settlement bears several signs of self-dealing warned of by prior precedent: a clear-sailing provision, a segregated feefund, and a disproportionate fee request. These factors suggest that the

current settlement is affords preferential treatment to class counsel at the expense of class members and should be rejected until the parties reach a more appropriate balance between benefit to the class members and enrichment of class counsel.

**A.   The settlement's "questionable" clear-sailing agreement requires heightened scrutiny.**

By the terms of the Stipulated Settlement the Defendants "agree not to oppose" class counsel's fee request of $4.75 million. Stipulated Settlement at 28. This so-called "clear-sailing" provision "by its very nature deprives the court of the advantages of the adversary process." *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991). The provision allows lawyers to "urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees" and "suggests, strongly" that the associated fee request requires "the microscope of judicial scrutiny." *Id.* at 518, 524-25; *accord Redman*, 768 F.3d at 637; *Bluetooth*, 654 F.3d at 947; *see also* American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.05, comment b at 208 (2010). The presence of a clear-sailing provision is "questionable" because the defendant would have no incentive to agree to it without compensation—"namely a reduction in the part of the settlement that goes to the class members, as that is the only reduction class counsel are likely to consider." *Redman*, 768 F.3d at 637. Such a clause illustrates the danger of collusion between class counsel and the defendant at the expense of class members. *Id.* This risk is particularly clear in this case as, in addition to the fee request itself, Red Bull has agreed not to oppose the valuation of superficial label changes at $18.5 million—140% of the $13 million in the monetary settlement fund. Stipulated Settlement at 22. *See Redman*, 768 F.3d at 637 (subjecting clear sailing agreement to even more intense scrutiny when "involving a non-cash settlement award to the class"). The agreement, especially applied to the valuation of intangible relief, essentially provides class counsel the opportunity to write themselves a blank check for the purposes of calculating the class benefit component to their fee request.

**B.** **The Settlement provides for a "defective" segregated fee fund, which deters scrutiny of fees.**

Counsel propose to take their $4.75 million fee from a fund segregated from the $13 fund devoted to class benefits and administrative expenses. Stipulated Settlement at 11. This segregation creates what is known as a "constructive common fund," colloquially known as a "kicker." *See, e.g., Pearson v. NBTY,* 772 F.3d 778, 786 (7th Cir. 2014); *GM Trucks,* 55 F.3d at 820-21 (A severable fee structure "is, for practical purposes, a constructive common fund."). A traditional common fund structure—in which attorneys' fees and class benefits come from the same pot—is superior to a segregated fund because it renders transparent the relationship between gains to counsel and loss to the class. *See Pearson,* 772 F.3d at 786; *Bluetooth,* 654 F.3d at 949. A segregated fund like the one proposed here is a classic red-flag of a settlement driven by attorneys' fees, and thus begets a "strong presumption of...invalidity." *Pearson,* 772 F.3d at 787; *accord Redman,* 768 F.3d at 637 (segregation is a "defect"); *Eubank,* 753 F.3d at 723 (segregation is a "questionable provision"). This "kicker arrangement reverting unpaid attorneys' fees to the defendant rather than to the class amplifies the danger" that is "already suggested by a clear sailing provision."*Bluetooth,* 654 F.3d at 949. "The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." *Id.*

Where a traditional common fund is employed, the court can benefit class members simply by disallowing excessive fee requests. *See, e.g., Pearson,* 772 F.3d at 786 (calling this the "simple and obvious" solution); *In re World Trade Ctr. Disaster Site Litig.,* 2015 U.S. Dist. LEXIS 15942, at *43 (S.D.N.Y. Jan. 16, 2015) (ordering improper portion of attorneys' fees to be distributed amongst plaintiffs); *Cassese v. Wash. Mut., Inc.,* 2014 U.S. Dist. LEXIS 85836, at *6 (E.D.N.Y. June 23, 2014) (describing the reduction of "the fee award sought by Class Counsel in order to provide the Class with the opportunity to claim against a larger share of the Settlement Proceeds."). A segregated fund deters judicial scrutiny precisely because there is no way to benefit the class through such redistribution.

**C.    The fee request contemplated by the settlement is based on an overestimation of class benefit.**

A third clear sign of an unfair settlement occurs when counsel receive a disproportionate distribution of the settlement. *See Bluetooth*, 654 F.3d at 947; *Pearson*, 772 F.3d at 782. "[I]n consumer class actions…the presumption should…be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson*, 772 F.3d at 782; *Dennis*, 697 F.3d at 868 (38.9% fee request would be "clearly excessive"); *Brown v. Sega Amusements, U.S.A., Inc.*, 2015 U.S. Dist. LEXIS 28442 (S.D.N.Y. Mar. 9, 2015) (rejecting settlement where class counsel sought 56% of the proceeds); *In re Excess Value Ins. Coverage Litig.*, 598 F. Supp. 2d 380, 390 (S.D.N.Y. 2005) (holding that it is "anomalous and unacceptable for counsel to fare better than the Class."). In calculating settlement value courts must scrutinize what class members will *actually* receive, not simply what the parties claim they will receive. *See, e.g., Pearson*, 772 F.3d at 781; *ALI Principles* § 3.05; *Pampers*, 724 F.3d 713 (6th Cir. 2013); *In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013). Settling parties bear the burden to prove the settlement is fair. *Pampers*, 724 F.3d at 718-19 (citing authorities).Here, class counsel use several means to inflate the value of the settlement beyond what class members will actually receive.

**1.    Red Bull's in-kind payments should not be valued at market retail for the purposes of calculating settlement benefit.**

The proposed settlement gives class members the option of receiving either a $10 cash reimbursement or "either Red Bull ® Energy Drink or Red Bull ® Sugarfree products of $15.00 in Retail Value (potentially subject to an increase or a decrease in that value.)" Stipulation of Settlement at 14. Non-cash relief is recognized as a "prime indicator" of suspect settlements. *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,55 F. 3d 768, 803 (3d Cir. 1995).This is because only cash can reliably capture the *actual* value of the settlement benefit to plaintiffs. Class counsel proposes to count in-kind claims made for products at their retail market price of $15—50% more than the alternative $10 cash award. This comparative valuation is unjustified by evidence of the actual valueof the product option to class members.

From the perspective of class members, it is certainly true that, due to the cash option, the settlement does not wholly exclude members who no longer drink Red Bull and thus value it at zero. However, basic economics distinguishes "choice price" from buying price.[3] A member who selects the product option over the cash option does not necessarily value it at the full $15 it would cost to purchase it from the store. In other words, even if we can assume class members who make in-kind claims do not value the products *less* than $10, there's no indication they value them more. *See O'Brien v. Brain Research Labs,* LLC., 2012 U.S. Dist. LEXIS, 113809, at *60 n.8 (D.N.J. Aug. 9, 2012) (evaluating a similar cash/ coupon settlement and finding only that a class member who chooses the latter "values it at least as much as the cash option"). For these reasons courts have taken into account the fact that retail price may over-represent the value of a product to a class member for the purposes of determining attorneys' fees. For example, when calculating the value of a similar mixed settlement fund in *Parker v. Time Warner Entm't Co., L.P.,* the district court rejected class counsel's estimate that about 50% of claimants would select free cable services with a retail value of $50 and about 50% would select the option of free movies with a retail value of $8, while "very few claimants" would take the $5 cash option. 631 F. Supp. 2d 242, 267 (E.D.N.Y. 2009). The court found both that "[t]he retail price of the service benefits overstates their value to customers" and that "the retail price of the benefits are not reflective of their cost to Time Warner to provide." *Id.* (internal citations omitted). The *Parker* court found that any valuation of the claims made by class members was speculative without knowing, among other things, the subjective value of the service benefits to class members. *Id.* at 268. Consequently the court valued the in-kind claims at $6.75—the

---

[3]The studies supporting the existence of the "endowment" effect in decision-making used, as their baseline, the "choice price," i.e., the lowest price at which subjects would choose to receive an object (a mug) over money. Buying price—the amount one would spend on something they did not already have—is naturally lower than choice price due to a natural aversion to loss of money. *See* Leaf van Boven et al, "Mispredicting the Endowment Effect: Underestimation of Owners' Selling Prices by Buyers' Agents," 51 *Journal of Economic Behavior and Organization* 351, 353 (2006). The reliance on choice price instead of buying price has been cited by critics as a weakness in the study as it fails to capture normal market dynamics.

sum of the $5 cash benefit plus the cost of cutting and mailing the check. *Id.* The court noted that "If the cost of providing service benefits was greater than the $6.75 cost to provide the cash benefit, Time Warner would not have fought against having a cash option, a point that was stressed by Class Counsel." *Id.* In the absence of evidence about class members' subjective valuation of the $15 of Red Bull products the Court should apply the same calculus as the E.D.N.Y. did in *Parker*, and value the in-kind claims the same as the cash reimbursements.

*Parker* also drives home the fact that retail price vastly overstates the cost to the *defendant* of supplying in-kind compensation, a factor relevant to the component of attorneys' fees that derives from the difficulty of the work performed (here, negotiation with the defendant). The *Parker* court deduced the true cost from the amount of the cash alternative, but even if that method is rejected the other reasonable alternative methods of calculation nonetheless result in a figure less than $15 per claim. For example, courts have found the wholesale value of defendants' products donated to a *cy pres* charity to be a more appropriate measure of settlement benefit than their retail price, because "the retail value of a product represents a substantial markup from its wholesale cost, in that it includes not only costs but expected profits for the manufacturer and the retailer." *Weeks v. Kellogg Co.*, 2011 U.S. Dist. LEXIS 155472, at *76 (C.D. Cal. Nov. 23, 2011). *See also Dennis v. Kellogg*, CV No. 09-01786 IEG (WMCx), 2011 U.S. Dist. LEXIS 36651 (S.D. Cal. Apr. 5, 2011), *rev'd on other grounds* 697 F.3d 858 (9th Cir. 2012). Similarly, the $15 price-tag on the Red Bull beverage includes mark-ups that are not a part of the defendant's actual cost. The irrelevance of retail price to a corporation's value in its own product is likewise reflected in the tax laws governing charitable donations of surplus inventory by C corporations. When a corporation donates surplus product it may make a deduction equal to the product's basis cost plus 50% of the difference between cost and retail value. 26 U.S.C. § 170(e). So assuming the basis cost for Red Bull products that retail at $15 is $5, the corporation could take a tax deduction for only $10. ($5 cost plus ($15-5)/2)). This figure would vary depending on the actual basis cost, of which we have no evidence, but it will always be substantially lower than $15. In sum: we have no evidence of the subjective value of the product

option to class members, and concrete evidence of the fact that its cost to the defendant is substantially less than $15. The parties have therefore failed to meet their burden of proving that $15 is an appropriate valuation of the in-kind claims. By information and belief, appropriate valuation would result in a significant reduction in the claimed value of the settlement fund. The Court should demand the parties provide this evidence, or draw an adverse inference if they fail to provide it.

### 2. The prospective injunctive relief counted as a class "benefit" does nothing to compensate actual class members.

The single page of the Settlement describing injunctive relief states that Red Bull has "voluntarily updated its Marketing and labeling directed at United States consumers and has done so to address the concerns raised in the New York and California Actions as to the specific representations identified in the complaints in those actions" and "all future claims about the functional benefits of its products will be medically and/or scientifically supported." Settlement at 21. While the proposed Settlement contains no details about the contents of this "voluntary" relabeling, the central concern repeatedly alleged in the Complaint itself appears to be the lack of scientific evidence for the claimed energy benefits of Red Bull beyond that of a cup of coffee.[4] In particular, the Complaint takes specific, and repeated, issue with the slogan "Red Bull gives you wings" as a false assertion of the product's better-than-coffee-ness. Complaint at 2, 5, 7. Upon information and belief, the most significant substantive change in Red Bull's broader advertising campaign is that it is now limited to the quite substantial range of energy claims that can generally be made of any beverage containing its active ingredient, caffeine. Even the much-maligned slogan has only been reworded as "Wings when you need them." *See* Red Bull products page *at http://energydrink-us.redbull.com/red-bull-energy-drink* (accessed March 24, 2015). Class counsel, with the promise of acquiescence from the defendant, apparently seek to value these injunctive "benefits" at $18.5 million—40% more than the $13 million settlement allocated (less expenses) for class member reimbursement. Settlement at 22. There is no evidence that consumers perceive these slogans

---

[4] Section VIA, *infra*, breaks down the content of these claims in greater detail.

differently, or even that one is less misleading than the other. How is this possibly a consumer benefit?

Courts of the Second Circuit and elsewhere have repeatedly warned of the disingenuous attempt by class counsel to estimate the value of inestimable injunctions for the purposes of justifying unwarranted attorneys' fees through fundamentally superficial changes in business practices. *See Kaplan v. Rand*, 192 F.3d 60, 70-72 (2d Cir. 1999) ("Far from providing a remedy for clearly identified past misconduct, the settlement in this case strives to provide therapeutic 'benefits' that can only be characterized as illusory"); *Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 114 (S.D.N.Y. 1999) ("This settlement has earmarks of a non-arm's length, 'politely' collusive settlement: one providing a nonpecuniary benefit of very little value to shareholders and a fairly substantial award of attorney's fees to plaintiff's counsel for a modest amount of work"); *In re Oracle Secs. Litig.*, 132 F.R.D. 538, 544-45 (N.D. Cal. 1990) (referring to injunctive relief "expert valued at some fictitious figure" coupled with "arrangements to pay plaintiffs' lawyers their fees" to be the "classic manifestation" of the class-action agency problem); *Dennis*, 697 F.3d at 868 (chronicling problem of "fictitious" fund valuations that "serve[] only the 'self-interests' of the attorneys and the parties, and not the class."). Precisely because the value of injunctive relief is difficult to quantify, its value is also easily manipulable by overreaching lawyers seeking to increase the value assigned to a common fund. *Staton v. Boeing*, 327 F.3d 938, 974 (9th Cir. 2003)."Cases are better decided on reality than on fiction." *Pampers*, 724 F.3d at 721 (internal quotation omitted)

Further, regardless of how substantively valuable to *society* the injunctive marketing changes turn out to be in this case, as a matter of law they are not worth $18.5 million *in class value*. This is because "'[t]he fairness of the settlement must be evaluated primarily based on how it *compensates class members*'—not on whether it provides relief to other people, much less on whether it interferes with the defendant's marketing plans." *Pampers*, 724 F.3d at 720 (quoting *Synfuel Techs., Inc., v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006)). Here, "[n]o changes to future advertising by [the defendant] will benefit those who were already misled by [the defendant]'s representations."

*True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1077 (C.D. Cal. 2010); *see also Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877,880 (7th Cir. 2000) (defendant's injunctive agreement not to use the abusive debt collection letter that was at issue in the case is a "gain" of "nothing" for class members). "Future purchasers are not members of the class, defined as it is as consumers who have purchased [the product]." *Pearson*, 772 F.3d at 786.These are proper recognitions of the principle that the class is composed of people who have done business with the defendants *in the past*, while the prospective injunctive relief can only benefit those who do business with defendants *in the future. See Felix v. Northstar Location Servs.*, 290 F.R.D. 397, 410 (W.D.N.Y. 2013) (prospective injunctive relief promise of no value to class members who only dealt with defendant in past transactions). Even if the labeling changes impose costs *on the defendant*, that is not the measure of compensable value. *Bluetooth*, 654 F.3d at 944 ("[T]he standard [under Rule 23(e)] is not how much money a company spends on purported benefits, but the value of those benefits to the class.") (quoting *TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 423 (N.D. Cal. 2009)).

As in most cases of false advertising, members of the actual class are on notice of the defendant's alleged misrepresentations about Red Bull's effects and should be presumed to have stopped relying upon them in making purchases because "the law accords people the dignity of assuming that they act rationally, in light of the information they possess." *McNair v. Synapse Group, Inc.*, 672 F.3d 213, 225 (3d Cir. 2012).*Accord Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 647 (S.D.N.Y. 2011). *See also Martin v. Cargill, Inc.*, 295 F.R.D. 380, 384 n.4 (D. Minn. 2013) (finding that "the proposed changes will not aid the class in any significant way, as its members have (allegedly) already been "deceived" by the labeling and marketing of Truvia.").

In sum: the constant potential for conflict of interest between counsel and class is exacerbated in the injunctive context as counsel acts on behalf of another party—future Red Bull customers—as opposed to the class itself. The $18.5 million price tag on these injunctive "benefits" is thus vastly inflated; it should be $0 for the purposes of determining benefit *to the class*, which is the touchstone for evaluating fee requests.

### 3. Administrative expenses reduce class benefit still further, and by an indeterminate amount.

The settlement contemplates the reduction of the $13 million settlement fund by "all applicable Notice Expenses, and administration and tax expenses" before the remainder is finally distributed to class members. Stipulated Settlement at 7. Such costs should not be considered part of the value of the settlement to the class for the purposes of calculating attorneys' fees. *Redman,*768 F.3d at 630 (stating that such costs should be excluded when "calculating the division of the spoils between class counsel and class members" because "those costs are part of the settlement but not part of the value received from the settlement by the members of the class" and "shed no light on the fairness of the division of the settlement pie between class counsel and class members"); *Myles v. AlliedBarton Sec. Servs.,* LLC, 2014 U.S. Dist. LEXIS 159790, at *16 (N.D. Cal. Nov. 12, 2014) ("the fees paid to the settlement administrator -- do[] not constitute a benefit to the class members"); *In re Volkswagen & Audi Warranty Extension Litig.,* 2015 U.S. Dist. LEXIS 16646, at *40 (D. Mass. Feb. 10, 2015) ("Counting administration fees as part of the settlement valuation for attorneys' fees purposes might also inadvertently incentivize the establishment of costly and inefficient administration procedures which would inflate the benefits valuation without increasing actual benefit for class members.").

Furthermore, the parties have failed to provide an estimate of thevarious expenses that will diminish the value of the class fund. *Chesbro v. Best Buy Stores,* L.P., 2014 U.S. Dist. LEXIS 25404, at *10 (W.D. Wash. Feb. 26, 2014) (stating that court needs the estimated costs of administration before approving the settlement); Procedural Guidance for Class Action Settlements, *available at* http://cand.uscourts.gov/ClassActionSettlementGuidance ("The parties should also address the anticipated administrative costs, the reasonableness of those costs in relation to the value of the settlement and who will pay the costs."); *R.H. v. Premera Blue Cross,* 2014 U.S. Dist. LEXIS 92691, at *18 (W.D. Wash. July 7, 2014) (faulting notice for failure to provide "approximate litigation costs"); *Ahdoot v. Babolat,* 2014 U.S. Dist. LEXIS 124115 (C.D. Cal. Sept. 4, 2014) ("the Court is unable to discern if Rust Consulting, Inc., is an appropriate Settlement Administrator absent any information

of any sort regarding Rust Consulting, Inc.'s anticipated fees."); *Willner v. Manpower Inc.*, 2014 U.S. Dist. LEXIS 123450 (N.D. Cal. Sept. 3, 2014) ("The notice... is missing the amount that is expected to be paid to the claims administrator, as well as the address of the claim administrator."). Approving a settlement without a firm accounting of the settlement's allocation is reversible error. *Baby Prods.*, 708 F.3d 163.   If the settling parties do not submit the final claims data and administrative expenses on to the record of their own accord, this Court has an obligation to "affirmatively seek out" that information to ascertain actual class benefit. *Id.* at 175

~ ~ ~

The potential excess of class counsel's request can only be seen through a comprehensive review of the settlement benefits. Class counsel would have the Court believe it is only seeking 13% of a constructive common fund worth $36.25 million. Immediately, we should subtract the $18.5 million "value" of the injunctive labeling changes, leaving just the fees and the $13 million settlement fund. Assume further that the costs of notice and administration amount to $2 million, leaving a net beneficial settlement fund of just $11 million. If 50% of claimants claim cash, and the other half claim product, then the $11 million net fund will break down into $6.6 million of product and $4.4 million in cash. Because there is no evidence that the product should be valued at more than the cash alternative however, the net settlement fund in this example is worth only $8.8 million ($11 million less $2.2 million). Thus, the fee award could surpass 35% or even the 38.9% threshold of what would be "clearly excessive." *Dennis*, 697 F.3d at 868.

**D.      The prospect of self-dealing is further heightened because the deadline for objections is before the deadline for the fee motion in violation of Rule 23(h).**

The discussion in this Section has been based upon the fee amount contemplated by the settlement and class notice. Because class counsel's fee motion is not due until after the objection deadline objectors have had no opportunity to review the specific claims they might make about such fact-specific questions as settlement valuation and counsel's lodestar. Other Circuits have recognized that such a schedule deprives objectors of the full and fair opportunity to examine and

oppose the fee motion, thereby running afoul of Rule 23(h). *Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010) (holding that "when the district court sets a schedule that denies the class an adequate opportunity to review and prepare objections to class counsel's completed fee motion, it fails to fulfill its fiduciary responsibility to the class"); *accord Redman*, 768 F.3d at 637-638. In an unpublished non-precedential opinion the Second Circuit has previously disagreed with *Mercury*. *Cassesse v. Williams*, 503 Fed. Appx.55 (2d Cir. 2012). *Cassesse* has been criticized for both doctrinal and policy reasons. Rubenstein, 3 *Newberg on Class Actions* § 8:24 (5th ed. 2014). At a doctrinal level, Rule 23(h)(1) requires notice of the fee *motion* and an opportunity to object to it; those marks are simply not hit by notice of a fee *level*. *Id.* From a policy standpoint, "[k]nowing the level of the fee alone is a weak substitute for reviewing the full fee petition as the latter ought to provide more detail about counsel's time and efforts, precisely the detail that would make the opportunity to object meaningful. For example, if class members were concerned that their counsel settled their claims for too low an amount in exchange for a large fee, it would be useful to know not only the level of that fee but how much of a multiplier of counsel's lodestar the fee represented." *Id.* Because *Cassesse* is nonprecedential, this Court should follow the better-reasoned *Mercury Securities* and *Redman* decisions.

This settlement's violation of 23(h) is another reason to disapprove the proposed deal. Regardless, Frank reserves the right to seek leave to file an opposition to the fee motion.

## IV.    The Settlement's future claims release is too broad.

The proposed settlement provides for release of a broad swath of claims through the effective date and for release of "any claims arising after the date of final approval which could be asserted based on labels or advertising in existence as of the date of final approval of the Stipulation." Settlement at 10. Yet by the terms of the Settlement itself, providing for the switch to new labeling effective September 1, 2014, the "labels or advertising in existence" at the time of the settlement will be wholly different from those that formed the basis for this action. Thus, the release is illogical. But it's also unlawful. "It is elementary that a settlement agreement cannot release claims that the parties

were not authorized to release." *In re Am. Express Fin. Advisors Secs. Litig.*, 672 F.3d 113, 135 (2d Cir. 2011). When a settlement's agreed-upon release exceeds its permissible scope, both the defendants and class counsel get a benefit at the expense of absent class members. An expanded release makes the terms more valuable to the defendant while simultaneously inducing them to grant an even more sizable award of fees to class counsel. As such, the terms of the release need to be closely policed.

To be authorized, all released claims must share "the identical factual predicate" underlying the claims of the original action. *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 107 (2d Cir. 2005). Subject matter specificity is insufficient; the released claims must hew to the facts of the underlying complaint. *Custom LED, LLC v. ebay, Inc.*, 2013 U.S. Dist. LEXIS 122022 (N.D. Cal. Aug. 27, 2013); *Chavez v. PVH Corp.*, 2015 U.S. Dist. LEXIS 17511 (N.D. Cal. Feb. 11, 2015). It is paradoxical to suggest that the new labeling—touted by class counsel as the hard-won *benefit* of this litigation—can be a factual predicate "identical" to the original disputed labeling. Because the settling parties are attempting to waive liability for events that have not yet occurred—reliance by future parties on the representations made in Red Bull's revised labeling—those events by definition cannot share a factual predicate with the acts alleged in the complaint. Defendants cannot be permitted to insulate their future conduct with respect to unripe claims. Class counsel and the named representatives are not authorized to trade these claims away. *See, e.g., Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 577 (E.D. Pa. 2001) ("The release is also too broad because it bars later claims based on future conduct."); *Newberg on Class Actions* (4th ed. 2002) § 12:15 ("As a matter of settlement strategy, the defendants may negotiate a release of all claims *up to the date of settlement*, though this date naturally falls after the date the complaint was filed.") (emphasis added). *Authors Guild v. Google, Inc.*, 770 F. Supp. 2d 666, 675, 679 (S.D.N.Y. 2011) (Chin, J.) (repudiating settlement that insulated a "forward-looking business arrangement" as exceeding the permissible scope of a release); *see generally* James Grimmelmann, *Future Conduct and the Limits of Class Action Settlements*, 91 N.C. L. Rev. 387 (2013). *Cf. also In re Am. Express Fin. Advisors Secs. Litig.*, 672 F.3d at 138 ("[T]here can be

no question that the [class members'] claims, to the extent that they involve conduct occurring after the Class Period, cannot be Released Claims.'"). The release creates *de facto* preclusion, but the parties have presented no analysis before the objection deadline to ensure that class members are not waiving inalienable claims.

## V. The Settlement's *cy pres* component impermissibly fails to identify the residual recipient.

Neither the proposed settlement nor the class notice informs class members who will be the recipient of any *cy pres* funds "[i]f the total value of…uncashed checks is less than $100,000.00" and the residual amount is "donated by Defendants as a cy pres remedy to one or more charitable organizations to be mutually agreed upon by the parties." Stipulated Settlement at 17. Failure to identify a *cy pres* recipient makes a settlement "unacceptably vague." *Dennis v. Kellogg*, 697 F.3d 858, 867 (9th Cir. 2012). "Just trust us. Uphold the settlement now, and we'll tell you what it is later" is not a permissible limiting principle." *Id.* at 869. While this case is, of course, not as egregious as *Dennis* insofar as the *cy pres* option may not be resorted to at all, the identity of the residual *cy pres* beneficiary is nonetheless a material element of the relief. *In re VeriFone Holdings, Inc. Sec. Litig.*, 2013 U.S. Dist. LEXIS 126988, at *6 (N.D. Cal. Sept. 5, 2013) (ordering that a settlement stipulating that "any balance remaining six months from the date of the initial distribution from the Settlement Fund (*e.g.*, uncashed checks or tax refunds) shall be reallocated to Authorized Claimants in an 'equitable and economic fashion'" should be reworded to define "equitable and economic fashion."). If a *cy pres* recipient's identity were simply an immaterial administrative detail, courts would not invalidate distributions on the grounds that the recipient was improperly selected. *See, e.g., Dennis*, 697 F.3d at 866 (reversing where proposed charities had "little or nothing to do with the purposes of the underlying lawsuit or the class of plaintiffs involved"). Under Rule 23(e), class members must have notice and a fair opportunity to object to this material aspect of the settlement. This "unacceptably vague" residual *cy pres* clause is further independent reason to reject the settlement.

**VI.    The parties have not met their burden that the proposed settlement class meets the requirements for certification under Rule 23.**

In order to obtain final certification of the Settlement Class, the plaintiffs must show that the Class meets the four criteria of Federal Rule of Civil Procedure 23(a), *i.e.,* (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation, and that the action is maintainable under one of the subsections of Rule 23(b). *See McLaughlin v. Am. Tobacco Co.,* 522 F.3d 215, 222 (2d Cir. 2008). Here, because the plaintiffs seek certification under Rule 23(b)(3), they must show that "questions of law or fact common to [Settlement Class] members predominate over any questions affecting only individual members," and that the class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) requirements must be proven by a preponderance of the evidence. *Brown v. Kelly,* 609 F.3d 467, 476 (2d Cir. 2010).Even if this settlement itself were not problematic, the requirements of Rule 23(a) and (b) should not be watered down by virtue of the fact that the settlement is fair or equitable. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006). Indeed, the specifications of the Rule "designed to protect absentees by blocking unwarranted or overbroad class definitions...demand undiluted, even heightened, attention in the settlement context."*Amchem Prods. v. Windsor,* 521 U.S. 591, 620 (1997).

**A.    The proposed class fails the commonality and typicality requirements of Rule 23(a) because common questions of law and fact do not predominate over individual ones.**

Under Rule 23(b)(3), questions of law or fact common to settlement class members must predominate over any questions affecting only individual members. Although the predominance requirement may be met in some cases of consumer fraud, the presence of individualized issues such as the necessity of proving reliance on the defendant's alleged misrepresentations, or the content of the underlying applicable law, preclude a finding of predominance. *McLaughlin,* 522 F.3d at 223 ("Proof of misrepresentation—even widespread and uniform misrepresentation—only satisfies half of the equation; the other half, reliance on the misrepresentation, cannot be the subject of general proof"). *See also Moore* v. *PaineWebber, Inc.,* 306 F.3d 1247, 1253 (2d Cir. 2002) ("[A]lthough having

some common core, a fraud case may be unsuited for treatment as a class action if there was material variation . . . in the kinds or degrees of reliance by the persons to whom they were addressed.") (quoting Fed. R. Civ. P. 23(b)(3) Advisory Committee Notes); *Blessing v. Sirius XM Radio Inc.*, 2011 WL 1194707, 2011 U.S. Dist. LEXIS 32791, at *10 (S.D.N.Y. Mar. 29, 2011) ("Courts have often held that reliance on a misrepresentation requires individualized proof."); *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 155 (S.D.N.Y. 2008) ("[M]embers of the Settlement Class may have purchased *GTA:SA* for any number of reasons other than its 'M' rating, including because they hoped the game would contain sex, violence, and other controversial content in abundance"); *In re St. Jude Med., Inc.*, 522 F.3d 836, 840 (8th Cir. 2008)("The need for detailed and individual factual inquiries concerning the appropriate remedy for any violation still weighs strongly against class certification."); *Langendorf v. Skinnygirl Cocktails, LLC*, 2014 U.S. Dist. LEXIS 154444, at *15-*19 (N.D. Ill. Oct. 30, 2014); *In re Clorox Consumer Litigation*, 301 F.R.D. 436, 446(N.D. Cal. 2014) (denying class certification for lack of commonality because plaintiffs had no basis for their claim that Clorox had presented a uniform message to its customers and were therefore not entitled to a class-wide presumption of reliance).

True, *In re Am. Int'l Group Secs. Litig.*, 689 F.3d 229, 232 (2d Cir. 2012), held that the inapplicability of fraud-on-the-market theory would not bar settlement class certification in a securities class action because, as "settlement eliminates the need for trial, a settlement class ordinarily need not demonstrate that the fraud-on-the-market presumption applies to its claims in order to satisfy the predominance requirement." But although *AIG* suggests that the predominance inquiry for settlement classes may be subject to less scrutiny than for litigation classes, the case deals with a uniform federal statutory regime, where no problem of interstate variation in causes of action exists. As the *AIG* court explained, even in the securities context, "if there appear to be conflicts within the class, with some members who could satisfy the presumption and others who cannot, a district court may need to address the applicability of the presumption in order to make findings with respect to adequacy of representation or predominance, or to evaluate whether subclasses are

necessary." *Id.* at 243; *cf. also In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 252 (finding (a)(4) violation where there was intraclass conflict). For *AIG* to be read so as to eliminate the reliance consequences of the predominance requirement would be to contravene the explicit directive of the Supreme Court in *Amchem*.

Some of the state consumer protection laws relied upon in the complaint—and others not specifically cited by the complaint but which would govern the claims of class members in their respective states—require a showing of reliance.[5]  Due to this disparity it is erroneous to assume reliance across the class when some states would have required an individual showing. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (decertifying a class of Honda purchasers where "variances in state law overwhelm common issues and preclude predominance for a single nationwide class"); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) (affirming the district court's denial of class certification because the consumer protection laws of many states, not just of Ohio, would govern the claims and factual variations among the claims abounded); *In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1018 (7th Cir. 2002)("State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules."); *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096 (C.D. Cal. 2012) (refusing to certify a class where the court would have to apply the consumer protection laws of fifty states); *cf. also Johnson v. Nextel Communs., Inc.*, __F.3d__, 2015 U.S. App. LEXIS 3470 (2d Cir. Mar. 4, 2015) ((b)(3) not satisfied where case required application of 27 different states' laws). For the instant nation-wide class to be properly certified it is necessary to look at what evidence Plaintiffs have mustered to show class-wide reliance on Defendants' allegedly misleading advertisements and labeling.

Here Plaintiffs allege class members were harmed by Defendants' labeling claims "about the superiority of their 'functional beverage' and its ability to 'give you wings' and provide energy and

---

[5] *See, e.g.,* Ala. Code § 8-19-10(e); Cal. Bus & Prof. Code § 17200; Tex. Bus & Com. Code § 17.50(a)(1)(B); Wyo. Stat. Ann. § 40-12-108(a).

vitality." Complaint ¶ 15. Beyond these catch phrases, Red Bull allegedly made the specific claim on its website and elsewhere that "'[n]umerous scientific studies on the product and the individual ingredients prove that Red Bull Energy Drink': Increases performance; Increases concentration and reaction speed; Improves vigilance; Stimulates Metabolism; and Makes you feel more energetic and thus improves your overall well-being." Complaint ¶ 16. Notably, the Complaint never alleges that those claims are not true. Rather, it marshals evidence indicating that they are *no more* true of Red Bull's "unique combination" of ingredients than they would be of a cup of coffee, because the primary active ingredient in Red Bull is caffeine. *See* Complaint ¶ 17 ("With the exception of some weak evidence for glucose and guarana extract there is an overwhelming lack of evidence to substantiate claims that components of [energy drinks], ***other than caffeine,*** contribute to the enhancement of physical or cognitive performance") (citing Tom M. McLellan, et al., "Do Energy Drinks Contain Active Components Other Than Caffeine?", *Nutrition Reviews,* Vol. 70, pp. 730-44 (2012); ¶18 (citing a *New York Times* article itself citing "widespread scientific and governmental criticism of the notion that energy drinks provide any more benefit than the average dose of caffeine consumed in a cup of coffee"); ¶ 20 (attacking a Red Bull-sponsored "scientific study" because "nothing in [it] supports the premise that Red Bull's ingredients do anything more for athletic performance than a cup of coffee" and once more citing the *Nutrition Reviews* article for the proposition that "there is little, if any, solid evidence to support an increase in either physical or mental 'energy' due to the consumption of these drinks, except for the increases attributable to the caffeine in these products").

Thus, for the purposes of demonstrating that a class member was harmed by the allegedly false representations in the Red Bull advertising campaign, Plaintiffs would need to show that he or she had relied not just on the representation that they provided energy-related benefits, but that they provided *more* energy-related benefits than a cup of coffee. It is certainly true that *some* customers might have relied on Red Bull's touting of its unique combination of ingredients to come to this conclusion. It may even be true that some (though presumably far fewer) customers might have

inferred supernaturalproperties from the "gives you wings" slogan, or—as plaintiffs suggest—from the fact that "Defendants have even created their own 'sports' such as the Red Bull Flugtag, where contestants create their own 'flying machine' and try to fly it off, for example, a pier into a body of water to underscore the message 'Red Bull gives you wings.'" Complaint ¶ 23. But it is equally true that many customers—like many soda addicts—expected no more lift than that in a cup of coffee but purchased Red Bull because of its taste, cold temperature or portability. And still others may have purchased it because they thought Red Bull Flugtag was cool, without believing it was literally powered by guarana extract. Certainly the spectrum of human gullibility is such that to the extent any members of this class concluded from Red Bull's representations that it was superior to coffee they did so to wildly differing degrees. The theory that every single member of the class, or even a majority of class members, was deceived by the promise of "wings" in making their Red Bull purchase "denigrates the intelligence of class members." *Pampers*, 724 F.3d at 720.The parties have failed to meet their burden of proof that common issues of reliance predominate.

## CONCLUSION

For the foregoing reasons, the settlement cannot be approved. To do so would violate Rule 23 by certifying a class that clearly fails its commonality and predominance requirements, and then using it as the basis for an award to class counsel premised mostly on illusory and partially on overvalued class benefits. If the Court decides to approve the settlement anyhow, it should at least reduce the award of attorneys' fees.

Dated:  March 31, 2015                Respectfully submitted,

Theodore H. Frank
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Telephone:  (703)203-3848
Email:  tfrank@gmail.com

*In pro per*

### Certificate of Service

I hereby certify that in accordance with the class notice, I caused the foregoing document to be sent via first class mail to the following individuals at the addresses listed below:

| | |
|---|---|
| **Morelli Alters Ratner, LLP**<br>Benedict P. Morelli<br>David S. Ratner<br>Adam Deutsch<br>777 Third Avenue, 31st Floor<br>New York, NY 10017 | **Kaplan Fox &Kilsheimer LLP**<br>Frederic S. Fox<br>850 Third Avenue, 14th Floor<br>New York, New York 10022 |
| **Morelli Alters Ratner, LLP**<br>Jeremy W. Alters<br>Matthew T. Moore<br>2675 Northeast 188th Street<br>Miami, Florida 33180 | **SkaddenArps Slate Meagher &Flom LLP**<br>Jason D. Russell<br>Hillary A. Hamilton<br>300 S. Grand Ave., Suite 3400<br>Los Angeles, CA 90071 |
| **Kaplan Fox &Kilsheimer LLP**<br>Laurence D. King<br>Linda M. Fong<br>350 Sansome Street, Suite 400<br>San Francisco, CA 94104 | Kenneth A. Plevan<br>Jordan A. Feirman<br>Four Times Square<br>New York, NY 10036 |
| **Kaplan Fox &Kilsheimer LLP**<br>Justin B. Farar<br>11111 Santa Monica Blvd, Suite 620<br>Los Angeles, CA 90025 | |

In addition, I caused the foregoing document to be sent via overnight delivery service to:

**Clerk of the Court**
**United States District Court**
**Southern District of New York**
**500 Pearl Street**
**New York, NY 10007-1312**

DATED this 31st day of March, 2015.

Theodore H. Frank

---

Frank Objection
Case No. 1:13-CV-0369 (KPF)                25