# EXHIBIT

# "D"

Filed 5/28/14

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

SERYL LITWIN, et al.,

Plaintiffs and Respondents,

v.

IRENEW BIO ENERGY SOLUTIONS, LLC,

Defendant and Respondent;

BERT CHAPA,

Objector and Appellant.

B248759

(Los Angeles County Super. Ct. No. BC447114)

COURT OF APPEAL – SECOND DIST.
FILED
May 28, 2014
JOSEPH A. LANE, Clerk
sstahl Deputy Clerk

APPEAL from a judgment of the Superior Court of Los Angeles County. Kenneth R. Freeman, Judge. Reversed with directions.

Lang, Hanigan & Carvalho, Timothy R. Hanigan for Objector and Appellant.

Kirtland & Packard, Michael Louis Kelly, Behram V. Parekh, Heather M. Baker for Plaintiffs and Respondents.

Weintraub Tobin Law Corporation, David R. Gabor for Defendant and Respondent.

---

* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, only section 2 in the Discussion of this opinion is certified for publication.

Plaintiffs filed class action lawsuits against iRenew Bio Energy Solutions, LLC, Harvest Trading Group, Inc., and Harvest Direct, LLC (collectively defendants) for advertising a bracelet made by iRenew as a revolutionary bracelet that uses the body's "biofield" to improve strength and wellness. Alleging the advertising claims were false, plaintiffs sought injunctive relief and damages on behalf of all persons in the United States who purchased an iRenew bracelet. Defendants agreed to settle the lawsuit, and the trial court approved a settlement agreement in which defendants would create a fund to reimburse class members for the purchase cost of the bracelet. Pursuant to the agreement, the trial court awarded $215,000 in attorney fees. Appellant Burt Chapa, a class member, objected to the settlement, alleging the trial court abused its discretion in awarding attorney fees and the notice afforded class members violated due process. We disagree with the first contention but agree with the second. Therefore, we reverse.

**Statement of Facts**

**1. The Lawsuit**

On October 7, 2010, Seryl Litwin filed a class action lawsuit against iRenew for false and misleading advertising in violation of the False Advertising Act (Bus. & Prof. Code, § 17500), the Unfair Competition Law (Bus. & Prof. Code, § 17200), and the Consumer Legal Remedies Act (Civ. Code, § 1750), alleging iRenew's claims that its bracelet balanced the body's biofield to improve wellness, balance, flexibility, and strength were false and misleading to the average consumer. Litwin sought injunctive relief, restitution, compensatory damages, and punitive damages.

On January 7, 2011, April Garton filed a class action lawsuit against Harvest Trading Group and Harvest Direct, the marketers of the iRenew bracelet, for injunctive and related equitable relief for false and misleading advertising, alleging the advertising of the iRenew bracelet to improve a person's biofield, "a subtle human energy field" that oversees the body's coordination and regulation, was false and unsupported by competent and reliable scientific evidence. The cases were subsequently consolidated.

**2. The Proposed Settlement**

Prior to class certification, the parties reached a settlement agreement. Under the proposed settlement, defendants agreed to reform their advertising of the iRenew bracelet and create a settlement pool of up to $1,300,000, less fees, costs, and expenses, to reimburse class members for the purchase price of the bracelet, including shipping and handling. If the aggregate value of the claims exceeded the maximum amount available from the settlement pool, reimbursement per claim would be adjusted downward on a pro rata basis. In exchange, class members agreed to release all claims against defendants.

The settlement class included "all persons who purchased for personal use, and not for re-sale, the iRenew Bracelet in the United States from January 2009, until the date of the preliminary approval order, except for the judge presiding over [the] matter." The settlement agreement provided for notice to class members in three forms: mail or email to any class members' known address, publication in People Magazine, and postings on a settlement Web site and other related Web sites.

Pursuant to the proposed settlement, plaintiffs' counsel agreed not to seek legal fees and costs in excess of $215,000, and the class representatives each agreed not to seek incentive awards in excess of $2,500.

**3. Preliminary Approval and Notice**

On May 24, 2012, the trial court granted class certification for settlement purposes, and preliminarily approved the settlement agreement with minor changes. The parties provided the court with exemplars of two versions of the proposed class notice: a long, explanatory notice, and a short, succinct notice. The court approved the content and form of the provided exemplars.

Both notices included information on the settlement agreement, the procedure to submit a claim, the procedure for class members to exclude themselves from the settlement, and information on objecting to the settlement. The short notice, under a section entitled, "What are my options?," stated class members could "Object to the settlement and appear in Court," and directed class members to the long notice. The long notice, in a section discussing class members' right to object, stated, "You can object to

the Settlement if you don't like some part of it. You must give reasons why you think the Court should not approve it and you must appear and speak at the Final Approval Hearing (*see* the section on the 'Court's Fairness Hearing' below) concerning your objection, in order to have standing to raise any objection and/or any appeal related to the Court's decision on that objection." In the section on the court's fairness hearing, the notice informed class members, "If you send an objection, you or your attorney will need to come to Court to talk about it or the Court will not consider it." The short notice was published in People Magazine and posted on the Internet. The long notice was sent by email or mail directly to class members with known addresses and posted on the Internet.

**4. Appellant's Objections**

After notice of the settlement was issued, appellant objected to the proposed settlement agreement. His main objection was that the settlement left an insufficient amount for the class after attorney fees, costs, and expenses were deducted from the $1.3 million fund. Appellant also objected to the proposed attorney fee request as excessive, and to the language in the notice requiring objectors to attend the final approval hearing to have their objections heard. Appellant argued requiring objectors to appear personally at the final approval hearing was unreasonable and violated class members' due process rights.

On December 18, 2012, the court requested clarification regarding the value of the class claims, expressing concern that there were insufficient funds to pay administrative costs and class members' claims. The parties provided that 19,685 claims had been submitted during the claims period, totaling $692,683.44. The parties also clarified that administrative fees were capped at $325,000, pursuant to a contract with the claims administrator. Accordingly, the final amounts to be paid by defendants under the settlement were as follows: $692,683.44 for class claims, $215,000 for attorney fees and costs, $5,000 for class representatives' incentive payments, and $325,000 for administrative fees, for a total of $1,237,683.44.

**5. Final Approval**

Plaintiffs then filed a motion for final approval of the settlement. In their memorandum of points and authorities in support of the motion, plaintiffs stated their counsel incurred $246,206.25 in attorney fees, calculated pursuant to the lodestar method, and $5,221.64 in costs. Per the settlement agreement, plaintiffs' counsel requested $215,000 in attorney fees and costs.

On March 1, 2013, the trial court issued an order granting final approval of the settlement, finding it to be fair, reasonable, and adequate. The court found the notice plan constituted the best notice practicable under the circumstances and provided sufficient notice to class members. Although appellant did not attend the final approval hearing because it was prohibitively expensive for him to do so, the court considered and overruled his objections, finding there would be sufficient funds to pay class members' claims.

The trial court ordered defendants to make $1,237,683.44 available for the settlement. The court awarded $2,500 to each named plaintiff and $5,221.62 in costs to plaintiffs' counsel. The court then determined plaintiffs' counsel's fee request of $209,778.86 represented a negative multiplier of .852 to the amount of fees incurred, which were $246,206.25. The court found the fee request was reasonable, and awarded a total of $215,000 for attorney fees and costs.

This appeal followed.

**Discussion**

**1. Attorney Fees**

Appellant argues the trial court abused its discretion in awarding $215,000 in attorney fees and costs. We disagree.

We review a trial court's determination of reasonable attorney fees under the abuse of discretion standard. (*Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 25.) "We start from the proposition that '"the experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court

is convinced that it is clearly wrong.'"'" (*Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 64.)

The United States Supreme Court has recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." (*Boeing Co. v. Van Gemert* (1980) 444 U.S. 472, 478.) "'[T]he fee setting inquiry in California ordinarily begins with the "lodestar," i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. . . . The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided.'" (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1134; see also *Serrano v. Priest* (1977) 20 Cal.3d 25, 49, fn. 23.) "To withstand scrutiny on appeal when [the lodestar] method is used, the record need only show the court awarded fees using that approach"; "[n]o specific findings reflecting the court's calculations [are] required." (*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1810; *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 254.)

Here, the record indicates the trial court awarded fees using the lodestar method. In support of the motion for final approval of the settlement agreement, plaintiffs represented that their attorneys incurred fees of $246,206.25, calculated using the lodestar method. Plaintiffs' counsel then requested $209,778.86 in fees and $5,221.64 in costs, for a total of $215,000, pursuant to the settlement agreement. In its final approval order, the trial court determined plaintiffs' counsel's fee request of $209,778.86 represented a negative multiplier of .852 to the amount of fees incurred under the lodestar method, and was therefore reasonable.

Appellant nevertheless argues the trial court abused its discretion in awarding attorney fees equal to 31 percent of the value of class members' claims. This argument has no merit. Although the practice of awarding attorney fees based solely on a percentage of the common fund had been adopted by some federal courts (see *Lealao v. Beneficial California, Inc.*, *supra*, 82 Cal.App.4th at pp. 27-31), "[t]he award of attorney fees based on a percentage of a 'common fund' recovery is of questionable validity in

California." (*Dunk v. Ford Motor Co.*, *supra*, 48 Cal.App.4th at p. 1809.) Appellate courts in California have, however, adopted the practice of cross checking the lodestar amount against the value of the class recovery to determine whether the trial court used the appropriate multiplier in the lodestar analysis. (*Lealao v. Beneficial California, Inc.*, *supra*, 82 Cal.App.4th at p. 45.) To determine the percentage of the class recovery that plaintiffs' counsel received, we consider the amount of attorney fees awarded compared to the common fund as a whole. (See *Boeing Co. v. Van Gemert*, *supra*, 444 U.S. at p. 478.)

When we cross-check the fee award against the value of the common fund, we find no abuse of discretion. Here, the attorney fees constituted only 16.5 percent of the total fund potentially available under the settlement agreement, well within the range of acceptable attorney fee awards.[1] Even if we were to compare the attorney fees awarded to the value of class claims, as appellant urges, the fee award is in line with class action fee awards. Here, the attorney fee award of $215,000 represents 31 percent of the value of class members' claims. "'Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.' [Citation.]" (*Chavez v. Netflix, Inc.*, *supra*, 162 Cal.App.4th at p. 66, fn. 11.) The trial court was therefore well within its discretion in awarding attorney fees of $215,000.

**2. Notice**

Appellant also challenges the sufficiency of notice given to class members, arguing the requirement that objectors attend the final approval hearing to have their objections heard violated class members' due process rights. We agree.

"While our review of the manner of giving notice is governed by the abuse of discretion standard, our review of the content of notice may be de novo. '"To the extent

---

[1] Appellant argues plaintiffs' counsel should not have received a percentage of the potential recovery that was not expended, here about $62,000. Even considering solely what defendants were required to pay under the settlement agreement, $1,300,000 less $62,000, attorney fees represented only 17 percent.

the trial court's ruling is based on assertedly improper criteria or incorrect legal assumptions, we review those questions de novo.''' [Citations.]" (*Cellphone Termination Fee Cases* (2010) 186 Cal.App.4th 1380, 1390.) Here, the purely legal question for our review is whether notice requiring class members to attend the final approval hearing to have their objections heard accords with due process.

"If the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection." (*Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797, 811-812, fn. omitted.) Procedural due process requires that affected parties be provided with "the right to be heard at a meaningful time and in a meaningful manner." (*In re Vitamin Cases* (2003) 107 Cal.App.4th 820, 829.) To accord with due process, notice provided to class members "must fairly apprise the class members of the terms of the proposed compromise and of the options open to the dissenting class members." (*Cho v. Seagate Tech. Holdings, Inc.* (2009) 177 Cal.App.4th 734, 746.) Under the California Rules of Court governing class actions, "notice of the final approval hearing must be given to the class members in the manner specified by the court. The notice must contain an explanation of the proposed settlement and procedures for class members to follow in filing written objections to it and in arranging to appear at the settlement hearing and state any objections to the proposed settlement." (Cal. Rules of Court, rule 3.769(f).)

The language of California Rules of Court, rule 3.769(f) indicates objectors may both file a written objection and appear at the final approval hearing, although they are not required to do both to have their objections heard. As explained by a leading treatise on class actions, "[i]t is unnecessary for objectors to appear personally at the settlement hearing in order to have their written objections considered by the court." (Newberg, Class Actions (4th ed. 2013) § 11:56.)

Here, the notice explicitly informed class members "[i]f you send an objection, you or your attorney will need to come to Court to talk about it or the Court will not consider it." Requiring class members in a nationwide class or even a statewide class to appear at the final approval hearing or hire an attorney to have their objections heard

works a hardship on objectors, as the benefit to the objector from the class action may be so low that it would be cost prohibitive or physically challenging to personally assert one's rights at a hearing in a potentially distant location. For example, here appellant indicated he was unable to attend the hearing because it was prohibitively expensive for him to do so as an out-of-state class member. In contrast, if an objector is permitted to file written objections to be considered, the burden on the court to review them is minimal and the cost to the parties remains the same. Requiring any objector to attend the final approval hearing does not offer a meaningful opportunity to be heard, and therefore violates class members' due process rights.

Adherence to these principles directly impacts the trial court's role in determining if the settlement is fair. That determination requires that the trial court balance several factors, which include, among others, class member reactions to the proposed settlement (see *Cellphone Termination Fee Cases*, *supra*, 186 Cal.App.4th at p. 1389), which the trial court cannot accurately evaluate when members' objections may have been stifled by the onerous requirement that they attend the final approval hearing. Although appellant was afforded the opportunity to be heard, there may have been many class members whose objections were chilled. Misstating objectors' rights such that they are dissuaded from exercising their opportunity to be heard does not fairly apprise class members of their options associated with the settlement. For these reasons, the order granting final approval of the settlement must be reversed.

**3. Unpaid Residual Funds**

We sent a letter to the parties requesting supplemental briefing on the distribution of unpaid residual funds. According to the facts set forth in the supplemental briefs, there appears to be approximately $27,000 in unpaid residual funds remaining after distribution of class claims. Pursuant to California Code of Civil Procedure section 384, the trial court should make appropriate findings as to the distribution of those funds.

**Disposition**

The order granting final approval of the settlement is reversed, and the case is remanded for further proceedings in accordance with the views expressed herein. Appellant is to recover his costs on appeal.

**CERTIFIED FOR PARTIAL PUBLICATION**

CHANEY, J.

We concur:

ROTHSCHILD, Acting P. J.

MILLER, J.*

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.